**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF OHIO
WESTERN DIVISION**

Darlene F. Sites,                                    :            Case No. 3:06CV2274

     Plaintiff,                                      :

v.                                                        :

Commissioner of Social Security,            :            **MAGISTRATE'S REPORT AND
                                                                      RECOMMENDATION**

     Defendant.                                   :

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423.  Pending are the parties' briefs on the merits (Docket Nos. 12, 19 and 21).  For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed and the referral to the undersigned Magistrate be terminated.

## PROCEDURAL BACKGROUND

On November 20, 2002, Plaintiff applied for DIB alleging that she had been disabled since March 15, 1998 (Tr. 53-55).  Her request for benefits was denied initially and upon reconsideration (Tr. 36-39, 41-43).  On August 3, 2005, Plaintiff, her counsel, and Vocational Expert (VE) Richard P. Oestreich appeared at a hearing (Tr. 421).  A supplemental hearing at which Plaintiff, represented by counsel, and VE W. Bruce Walsh appeared and testified, was conducted on November 30, 2005 (Tr.

446).  The Administrative Law Judge (ALJ) William L. Hafer found that Plaintiff had not been under a disability from February 2002 to April 14, 2006 (Tr. 13-19).  The Appeals Council denied Plaintiff's request for review on July 28, 2006 (Tr. 5-7).  Plaintiff filed a timely action in this Court seeking judicial review of the Commissioner's final decision.

## JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## FACTUAL BACKGROUND

At the initial hearing conducted on August 3, 2005, Plaintiff was 47 years of age,  5'2" tall, and weighed 182 pounds (Tr. 426).  She had one child, Christie, who was under the age of 18.  Plaintiff completed the ninth grade.  She read with difficulty but she could count change from purchases (Tr. 425-426).  She walked with a cane held in her right hand (Tr. 429).

Plaintiff was last employed as a housekeeper in 1998 at Essex Health.  There, she mopped and cleaned rooms (Tr. 426).  She also held a position in quality control inspecting car parts.  The heaviest parts lifted weighed approximately fifty pounds (Tr. 426, 427).  In a prior job as a waitress, she took orders and "dropped checks off" (Tr. 427).

In 1998, fractures in Plaintiff's leg and ankle were repaired.  Plaintiff's patella was fractured and repaired in 2005 (Tr. 427).  Plaintiff experienced persistent pain in her ankle and leg  (Tr. 428).  Her pain was controlled with medication.  When asked to rank her pain on a scale of zero to ten with ten being associated with the most severe pain, Plaintiff rated her pain level as 10 without medication (Tr. 428).  Although she relied upon the use of a cane to assist her in walking and to prevent falls, Plaintiff had no

difficulty manipulating with her hands.  She did, however, have difficulty bending.  Bending caused sharp pain in her lower back (Tr. 429,430-437).

Plaintiff testified that she could sit up to three hours before she had to get up and walk (Tr. 428-429).  She could stand for about five minutes continuously , and she was unable to  walk "very far."  She could pick up a gallon of milk without difficulty (Tr. 429).  Plaintiff spent several hours watching television daily.  She sat on the porch to watch her grandchildren play (Tr. 434).  She cooked and washed dishes (Tr. 435).  She ate one meal daily, and she slept well with the assistance of drug therapy (Tr. 437).        Plaintiff took anti-inflammatory drugs, pain relievers and a muscle relaxant to treat her symptoms (Tr. 430).  Although an orthotic  shoe lift was prescribed, Plaintiff was reluctant to use the lift because it did not relieve the pain or prevent her from falling (Tr. 431).  Plaintiff was undergoing psychiatric treatment to address her conversations with her deceased sister, instances of talking to herself and crying bouts (Tr. 432, 436, 453).  She treats with a psychiatrist, Dr. Roy (Tr. 454).

VE Oestreich testified that a hypothetical plaintiff, aged 44 to 47 years, with a ninth grade education, Plaintiff's past work experience, ability to lift ten pounds frequently and twenty pounds occasionally and without any limitation in his or her ability to sit and optional use of a cane, could perform 60% of the sedentary work pool (Tr. 439-440).  She could perform inspection work at the medium and sedentary levels.  There would be approximately 1,500 medium level jobs in the state and 2,000 assembly jobs at the sedentary level (Tr. 440).

At the supplemental hearing conducted on November 30, 2005, Plaintiff testified that she talks to herself and that she frequently heard voices including that of her sister (Tr. 454).  She testified that she had been drug and alcohol free for two and a half years (Tr. 454). During a typical day, she tried to do some house cleaning.   Plaintiff found it therapeutic to have coffee and talk to a friend (Tr. 454).

3

Plaintiff continued to have persistent pain in her lower back and pain that radiated down her right leg.  As a result, she was unable to stand without sitting intermittently (Tr. 456).

The VE claimed that the hypothetical claimant of similar age, education and work background, with an ability to sit for six hours in an eight-hour workday, stand and/or walk in combination for a total of up to two hours, frequently lifting and/or carrying ten pounds and occasionally lifting and/or carrying twenty pounds, could not perform his or her past relevant work (Tr. 458-459).  He or she could, however, perform work as a marker/ labeler, hand packer and sorter.  There were 100, 150 and 125, respectively, such jobs, in the region encompassing Plaintiff's residence (Tr. 459).  These jobs would be performed while seated (Tr. 461).

## MEDICAL EVIDENCE[1]

### *2002*

On January 11, 2002, Dr. Michael W. Lindamood diagnosed Plaintiff with chronic right leg pain, status post fracture and right distal tibia/fibula with multiple surgical repairs.  He opined that Plaintiff was limited, from an occupational standpoint, from repetitive or stressful activities involving the right leg without an ability to rest as needed (Tr. 101).  In support of his thesis, he conducted X-rays of Plaintiff's lumbar spine.  The views showed good alignment, intact joints, intact joint spaces without arthritic or degenerative change, good bone density and good vertebral body height (Tr. 102).  He opined that Plaintiff's range of motion in the cervical spine, shoulder, elbows, wrists, hands/fingers, dorsolumbar spine, hips, knees, and ankles was normal (Tr. 106).

In February 2002, Dr. Elizabeth Das found that Plaintiff could occasionally lift and/or carry ten

---

[1] The medical history submitted to the Appeals Council was not included as it is not determinative of whether the ALJ's decision is based on substantial evidence.

4

pounds, frequently lift and/or carry less than ten pounds, stand and/or walk at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday and push and/or pull with limitations (Tr. 108).  Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl (Tr. 109).  There were no manipulative, visual, communicative or environmental limitations (Tr. 109, 110, 111).

A pain reliever was prescribed to treat low back pain on June 30, 2002 (Tr. 114).  On July 31, 2002, she was prescribed anti-inflammatory medication to treat right sciatica/back strain (Tr. 116).  An intramuscular injection was administered at the hospital and pain relievers were prescribed to treat an acute exacerbation of chronic leg and back pain (Tr. 118).  Two days later, Plaintiff was given another intramuscular injection for pain (Tr. 120).  On November 5, 2002, an additional pain reliever was prescribed (Tr. 123).  On December 1, 2002, Plaintiff was treated for lumbar muscle spasm secondary to a fall.  Additional medication was prescribed for spasms (Tr. 125).  On December 8, 2002, the application of heat to the area of pain was added to the treatment regimen (Tr. 129).

### *2003*

Plaintiff's complaints of back and right shoulder pain were treated with another prescription for pain/inflammation (Tr. 131).  On May 11, 2003, Plaintiff fell and fractured her right wrist.  The cast applied on May 13, 2003 was removed on June 13, 2003 and strength training recommended (Tr. 150).  In the interim on May 17, 2003, Plaintiff was prescribed additional pain medication for left chest pain (Tr. 140, 141).  On the following day, Plaintiff was diagnosed with a contusion of the left lateral chest wall (Tr. 144).

Dr. B. T. Onamusi opined that as a result of past injuries, Plaintiff would have difficulty engaging in activities that required heavy lifting, descending stairs and prolonged standing, walking or climbing (Tr. 154).  Her range of motion, however, was normal except in her dorsolumbar spine and

5

ankles (Tr. 157, 158).

In August 2003, Dr. Das opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry less than ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday and engage in unlimited pushing and pulling (Tr. 160).  Plaintiff should never climb using a ladder, rope or scaffold but she could occasionally climb using a ramp or stairs (Tr. 161).  There were no manipulative, visual, communicative or environmental limitations (Tr. 109, 110, 111

### *2004*

In August, Dr. Abul Hasan diagnosed Plaintiff with a major depressive disorder for which he prescribed an antidepressant and ascribed a global assessment of functioning (GAF) of 50[2] (Tr. 255). He further determined that there was evidence of a depressive syndrome characterized by sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking and hallucinations, delusions or paranoid thinking (Tr. 171).  Her restrictions on activities of daily living and her ability to maintain social functioning were moderately affected by her limitations; her deficiencies in decompensation, persistence and pace were frequently affected by her impairments and she had experienced three or more episodes of deterioration or decompensation in the work or work-like setting (Tr. 177).  In his opinion, these impairments and/or limitations corresponded with 12.04 of the Listing of Impairments.

In the meantime, the computed tomography scan of Plaintiff's lumbar spine showed a disc bulge

---

[2]

GAF is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults.  A score of 50 denotes serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).  AMERICAN PSYCHIATRIST ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th ed., Text Revision (2000).

without evidence of stenosis of the spinal cord at L2-3, L3-4, L4-5 (Tr. 166).  Views of Plaintiff's right hip showed no evidence of acute bony abnormality or degeneration (Tr. 188).  There was evidence of trauma to Plaintiff's right knee (Tr. 190).

In October 2004, Dr. Susan L. Hubbell prescribed a pain reliever to treat chronic back pain (Tr. 193).  In November 2004, she attributed some of Plaintiff's back pain to the 1.2 centimeter difference between the length of her left lower extremity and her right lower extremity (Tr. 181, 186).  She prescribed a shoe lift and attendant shoes and a pain reliever for the resulting pain (Tr. 181).  The nerve conduction studies of Plaintiff's legs and right arm showed normal results (Tr. 184, 185).

In November 2004, Dr. Roy opined that Plaintiff had an affective disorder that was consistent with 12.04 of the Listing (Tr. 259).  Dr. Hasan diagnosed Plaintiff with a GAF of 65[3] (Tr. 249).  Later in December, Dr. Hasan treated Plaintiff for cephalgia, continuing her medication.  Plaintiff denied any hallucinations, homicidal or suicidal thoughts.  He assessed Plaintiff's GAF as 70[4] (Tr. 247).  There were no documented side effects from her medication (Tr. 248).

***2005***

In March**,** Dr. Hasan noted during a clinical examination that Plaintiff was not hearing voices at that time and there were no overt signs of psychoses (Tr. 246).  Adding additional medication to the drug regimen to treat depressive episodes and depression, Dr. Hasan attributed to Plaintiff a GAF of 60[5]

---

[3]

A score of 65 is indicative of some mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

[4]

A score of 70 denotes some mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

[5]

A score of 60 denotes moderate symptoms OR any moderate difficulty in social, occupational, or school functioning.

(Tr. 246).  Dr. Subrata Roy assessed Plaintiff's medications noting that she was being treated for a major depressive disorder resulting from major drug and alcohol abuse (Tr. 229).  Dr. Hubbell continued Plaintiff's drug therapy, prescribed physical therapy and administered an injection in four trigger areas in the lumbar paraspinals.  There was some improvement in pain as a result of the injections (Tr. 209).

Dr. James E. Kemmler, an orthopedic surgeon, opined that Plaintiff could frequently lift/carry less than five pounds and occasionally lift five to ten pounds, stand/walk less than one hour but sit without limitation (Tr. 194).  In May, he observed that Plaintiff's fibular neck fracture was healing appropriately (Tr. 201).

The two views of the lumbar spine taken in June were compared with the study performed in March.  There were degenerative changes with no acute findings (Tr. 207).  Further treatment was contingent upon further tests (Tr. 214).  The nerve conduction studies of the right leg were normal (Tr. 216).  There was evidence of chronic mild S1 or S2 nerve root irritability and/or restoration of nerve function (Tr. 217).

Dr. Subrata Roy diagnosed Plaintiff with major depressive disorder noting a history of major drug and alcohol abuse (Tr. 229).  In August, Dr. Roy prescribed an additional antidepressant (Tr. 242).

Compared to the magnetic resonance imaging tests of Plaintiff's spine administered in August 2004, Dr. Duc Tan found no disc herniation, spinal stenosis or compression fracture (Tr. 206).

Despite the degenerative disc disease of the spine, Dr. Hubbell opined in August that Plaintiff could occasionally lift up to ten pounds, stand/walk thirty minutes at a time and sit less than one hour (Tr. 204).

Dr. Antony M. Alfano, Ph.D., opined in September that borderline intellectual functioning was

the best indicator of Plaintiff's current mental ability (Tr. 224).  He diagnosed Plaintiff with learning and

dysthymic disorders.  Her GAF was 58[6] (Tr. 225).  Based on a clinical interview, Dr. Alfano determined

that Plaintiff had no impairments in her ability to understand, remember or carry out instructions,

respond appropriately to supervision, co-workers and work pressures (Tr. 226-228).

## STANDARD FOR DISABILITY

Under the Social Security Act, 42 U.S.C. § 423(a), an individual is entitled to DIB payments if

he or she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed

an application for disability insurance benefits, and (4) is under a disability.  *Walters v. Commissioner*

*of Social Security*, 127 F.3d 525, 528 -529 (6th Cir. 1997).  Section 423(d)(1)(A) of Title 42 defines

"disability" to be the inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than twelve months.  *Id*.  An individual is

under a disability only if his or her physical or mental impairment or impairments are of such severity

that he or she is not only unable to do their previous work but cannot, considering their age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national

economy.  *Id*. (*citing* 42 U.S.C. § 423(d)(2)). In making a determination as to disability under the above

definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  *Id*.

First, the ALJ considers whether the claimant is working.  *Id.*  A working claimant doing

substantial gainful employment will not be considered disabled.  20 C. F. R. § 404.1520(a)(4)(i)

(Thomson/West 2008).

---

[6]
The GAF of 58 denotes moderate symptoms OR any moderate difficulty in social, occupational, or school functioning.

At the second step, the ALJ considers the medical severity of the claimant's impairment.  20 C. F. R. § 404.1520(a) (4) (ii) (Thomson/West 2008).  If the claimant does not have a severe medically determinable impairment that meets the duration requirement in Section 404.1509, or a combination of impairments that are severe and meets the duration requirement, a finding that the claimant is not disabled will issue.  20 C. F. R. § 404.1520(c)(Thomson/West 2008).

Third, the medical severity of the claimant's impairment is considered.  20 C. F. R. § 404.1520 (a)(4) (iii) (Thomson/West 2008).  If the claimant's medical impairment meets or equals one of the listings in Appendix1 of Subpart P of Part 404, Listing of Impairments and meets the duration requirement, then the claimant will be found disabled.  20 C. F. R. § 404.1520 (a)(4) (iii) (Thomson/West 2008).

Fourth, the ALJ must consider the assessment of residual functional capacity and the claimant's past relevant work.  20 C. F. R. § 404.1520 (a)(4) (iv) (Thomson/West 2008). If the claimant can do his or her past relevant work, they are not disabled.  20 C. F. R. § 404.1520 (a)(4) (iv) (Thomson/West 2008).

Finally, the ALJ must consider the assessment of residual functional capacity, age, education and work experience to determine if the claimant can make an adjustment to other work.  20 C. F. R. § 404.1520 (a)(4) (v) (Thomson/West 2008).  If the adjustment can be made, a finding of not disabled will ensue.  20 C. F. R. § 404.1520 (a)(4) (v) (Thomson/West 2008).  If the adjustment cannot be made, then the claimant is disabled.  20 C. F. R. § 404.1520 (a)(4) (v) (Thomson/West 2008).

During the first four steps, the claimant has the burden of proof.  *Walters*, *supra*, 127 F. 3d at 529 (*citing Young v. Secretary of Health and Human Services*, 925 F.2d 146, 148 (6th Cir. 1990); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987)).  The burden shifts to the Commissioner only at Step Five.  *Id.*

10

## ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings of fact after the

hearing on remand:

1.  Plaintiff met the insured status requirements of the Act through December 31, 2006.

2.  Plaintiff had not engaged in substantial gainful activity at any time relevant to this decision.  Plaintiff had severe impairments including status post tibia fracture in 1998 with open reduction and internal fixation, a bulging disc at L4-L5 level, a learning disorder, dysthymia and a history of drug abuse.  Plaintiff did not have an impairment or combination of impairments that met or was medically equal to one of the listing impairments in 20 C. F. R. Part. 404, Subpart P, Appendix 1.

3.  Plaintiff had the residual functional capacity to lift and/or carry ten pounds frequently, and twenty pounds occasionally, sit for six hours in an eight-hour day, occasionally stoop, kneel, crouch, crawl and climb stairs, never climb using ladders, ropes or scaffolds, never work in unprotected heights or around dangerous machinery and stand and/or walk for two hours in a normal eight-hour workday.  Plaintiff was also limited in her performance of unskilled work involving the ability to understand, remember and carry out simple instructions generally involving up to two steps.

4.  Plaintiff was unable to perform any past relevant work.  However, Plaintiff, a younger individual, with a limited education and ability to communicate in English, could perform a significant number of jobs in the national economy.

5.  Plaintiff was not under a "disability" as defined in the Act at any time from February 2002 through April 14, 2006.

(Tr. 13-19).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's conclusions unless the Commissioner failed

to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence.

*McClanahan, supra*, 474 F.3d 830 at 833 (*citing Branham v. Gardner,* 383 F.2d 614, 626-627 (6th Cir.

1967)).  In fact the Commissioner's findings as to any fact shall be conclusive if supported by substantial

evidence.  *Id.* (*citing* 42 U.S.C. § 405(g )).  "Substantial evidence is more than a scintilla of evidence but

less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (*citing Besaw v. Secretary of Health and Human Services,* 966 F.2d 1028, 1030 (6th Cir. 1992)). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* (*citing Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)). Therefore the reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 286 (6th Cir. 1994) (*citing Brainard v. Secretary of Health and Human Services,* 889 F. 2d 679, 681 (6th Cir. 1989); *Garner v. Heckler,* 745 F. 2d 383, 387 (6th Cir. 1984)).

## DISCUSSION

Plaintiff contends that the new material submitted to the Appeals Council requires a remand and/or reversal. In the alternative, Plaintiff argues that the ALJ erred in failing to (1) regard the uncontradicted statements of Drs. Hasan and Roy as indicative of her disability; (2) assess her credibility; (3) find that she has the residual functional capacity for a full range of sedentary work; (4) give controlling weight to the testimony of the consultative examiner that was not subject to cross-examination and (5) complete a Psychiatric Review Technique Form (PRTF).

### 1.

In a letter submitted to the Appeals Council after the ALJ had rendered an unfavorable decision, Plaintiff proffered new evidence of her deteriorating condition as a result of an accident occurring literally hours after the supplemental administrative hearing. Defendant argues that evidence not before the ALJ cannot be considered substantial evidence during judicial review.

Where the Appeals Council considers new evidence but declines to review the claimant's application for DIB on the merits, the district court cannot consider the new evidence in deciding whether to reverse, uphold or modify the ALJ's decision. *Cline v. Commission of Social Security*, 96 F. 3d 146, 148 (6th Cir. 1998) (*citing Cotton v. Sullivan*, 2 F. 3d 692, 695-696 (6th Cir. 1993)). However, the statute is quite explicit that the district court may order a sentence six remand for the taking of additional evidence but only upon a showing that the evidence at issue is both "new" and "material," and that there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Hollon ex rel. Hollon v. Commissioner of Social Security,* 447 F.3d 477, 483 (6th Cir. 2006) (*citing* 42 U.S.C. § 405(g); *see also Cline, supra*, 96 F.3d at 148)).  The party seeking a remand bears the burden of showing that these two requirements are met. *Id.* (*citing Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)).

Evidence is new if it was not in existence or available at the time of the administrative proceeding. *Id.*  Such evidence, in turn, is deemed "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Foster,* 279 F.3d at 357 (internal quotation marks and citation omitted)).

The new evidence proffered by Plaintiff's counsel includes diagnosis and treatment of a mild cardiomegaly, fractures at C2, thrombosis in the left leg and a focal clot.  Clearly, such evidence is new, non-cumulative evidence and Plaintiff had good cause for the failure to incorporate such evidence into the record in the prior proceeding.  However, such evidence is not material.  None of the treating physicians relate the new diagnoses and treatments to Plaintiff's condition during the relevant time period encompassed by the disability application under review.  Nor do any of the new diagnoses conflict with any of the medical evidence already in the record or call into doubt any of the prior medical decisions. The argument that such evidence would change the administrative result is unavailing.

13

The Magistrate finds that the evidence submitted to the Appeals Council is not material for purposes of the district court's authority to order a remand pursuant to 42 U. S. C. § 405(g).  The request for a remand pursuant to sentence six should be denied.

2.

Plaintiff argues that the ALJ failed to attribute controlling weight to the uncontradicted statements of Drs. Hasan, Hubbell and Roy as indicative of her disability.  Defendant argues that the weight of the medical evidence was reasonable considering the opinions resulting from conclusory and unsubstantiated medical reports.

In assessing the medical evidence supplied in support of a claim, there is a rebuttable presumption that the opinion of the treating physician is entitled to great deference.  *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007) (*citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4).  Because treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," their opinions are generally accorded more weight than those of non-treating physicians.  *Id.* (*citing* 20 C.F.R. § 416.927(d)(2)).

If the opinion of the treating physician as to the nature and severity of a claimant's condition is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in [the] case record, then it will be accorded controlling weight.  *Id.* (*citing Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004)).  If the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant

14

factors.  *Id.*

Treating source means the claimant's own physician, psychologist, or other acceptable medical source who provides, or has provided, medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant.  20 C. F. R. § 416.902 (Thomson/West 2008).  Generally, an ongoing treatment relationship with an acceptable medical source is presumed when the medical evidence establishes that the claimant has seen the medical source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the claimant's medical condition.  20 C. F. R. § 416.902 (Thomson/West 2008).

There is substantial evidence in the record that Drs. Hasan and Roy did not have an ongoing treatment relationship with Plaintiff.  During a five-month period, Dr. Hasan saw Plaintiff a total of approximately one hour and 45 minutes.  Over a period of one and one half hours, Dr. Roy assessed Plaintiff's condition, monitored her consumption of medication and prescribed another antidepressant (Tr. 229, 242, 243).  Neither medical source saw Plaintiff with the requisite frequency to provide a longitudinal picture of Plaintiff's impairment.  Thus, it is reasonable for the ALJ to withhold meaningful review of the opinions of these two physicians.

Even if Drs. Roy and Hasan were considered treating sources, their diagnoses are not supported by medically acceptable clinical or laboratory diagnostic techniques.  Dr. Roy's diagnosis is based solely on a clinical interview (Tr. 229, 242, 243).  There were no medically acceptable clinical or laboratory diagnostic techniques to support his/her conclusions.  Likewise, Dr. Hasan's diagnosis of major depressive disorder is the sole result of Plaintiff's complaints and her account of her medical history (Tr. 245-255).  Neither opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  The ALJ was neither bound by the opinions of Drs. Hasan or Roy nor required to attribute controlling

weight to their reports.

The ALJ relied on the report of Dr. Hubbell to show that Plaintiff had a discrepancy with her left leg for which she diagnosed an orthotic (Tr. 180).  The remainder of Dr. Hubbell's medical records show that the results of the nerve conduction studies were normal (Tr. 181, 215), there was insignificant pathology to support pelvic pain (Tr. 187), no significant degeneration in Plaintiff's hips (Tr. 188), no abnormality in Plaintiff's right knee (Tr. 190), and the magnetic resonance imaging tests of the spine were normal (Tr. 206).  These medically acceptable clinical or laboratory diagnostic techniques do not support Dr. Hubbell's conclusions that Plaintiff could not stand or walk for thirty minutes at a time and sit for less than one hour.  Dr. Hubbell's conclusions are based loosely on Plaintiff's subjective complaints, not medical determinable evidence.  The ALJ was not bound by such conclusions.

3.

Plaintiff contends that the credibility determination is not based on the evidence in the record.  Specifically, the ALJ exaggerated her participation in daily activities and failed to consider Dr. Hubbell's prognosis that she needs to rest every two hours for fifteen minutes.  These acts fail to comport to the analysis required in TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS:  ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, *4, SSR 96-7p (July 2, 1996), SSR 96-7p.  Defendant argues that the credibility assessment was reasonable.

Credibility determinations regarding subjective complaints rest with the ALJ.  *Rogers, supra*, 486 F. 3d at 249.  Those determinations must be reasonable and supported by substantial evidence.  *Id.*  An ALJ's credibility determinations about the claimant are to be given great weight, "particularly since the ALJ is charged with observing the claimant's demeanor and credibility."  *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007).  In assessing credibility, the ruling in SSR 96-7p emphasizes:

The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements. Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible. The adjudicator may also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree.

The ALJ provided four reasons for his finding that Plaintiff's symptoms and her statements regarding the intensity, duration and limiting effects were inconsistent and did comport with the Administration's requirements. First, during an interview at the field office on November 20, 2002, Plaintiff ambulated well. During her treatment, Dr. Hubbell noted that Plaintiff did not use her cane much. Second, the statements made for purposes of diagnosing her mental status and her reported use of illicit drugs daily were inconsistent with Dr. Roy's treatment (Tr. 238). Third, Dr. Kemmler noted that Plaintiff's pain was greater than expected for the recognized level of pathology. The electrodiagnositic tests did not support the complaints of pain (Tr. 196). Fourth, Plaintiff's activities did not support her allegations of severe functional limitations.

17

In assessing Plaintiff's credibility, the ALJ (1) did not simply recite factors that were described in the regulations for evaluating symptoms, (2) included specific reasons for rejecting Plaintiff's testimony and the medical reports; (3) supported the reasons for rejection with substantial evidence; and (4) published the weight attributed to Plaintiff's testimony.  Since all of these findings are well supported by the ALJ's observations and/or evidence in the record, the Magistrate must defer to the ALJ's credibility finding.

4.

Dr. Hubbell found that during every two hour period, Plaintiff required a fifteen minute rest.  The VE testified that Plaintiff was not capable of competitive employment.  Plaintiff claims that these factors are determinative that she does not have the residual functional capacity for a full range of sedentary work. Defendant suggests that Dr. Hubbell's opinions do not document limitations to the extent alleged by Plaintiff.  Dr. Hubbell's opinion was issued not long after Plaintiff sustained a knee injury which was resolved within twelve months.

Residual functional capacity is the most a claimant can still do despite his or her limitations.  20 C.F.R. § 404.1545(a) (Thomson/West 2008).  The assessment of residual functional capacity is based on all relevant medical and other evidence.  20 C. F. R. § 404.1545 (a)(3) (Thomson/West 2008).  In general, the claimant is responsible for providing the evidence used to make a finding about residual functional capacity.  20 C. F. R. § 404.1545 (a)(3) (Thomson/West 2008).  However, before a determination may be made that the claimant is not disabled, the Commissioner is responsible for developing the claimant's complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help the claimant obtain medical reports from the claimant's own medical sources.  20 C. F. R. § 404.1545 (a)(3) (Thomson/West 2008).  In addition, the Commissioner will

18

consider any statements about what the claimant can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.  20 C. F. R. § 404.1545 (a)(3) (Thomson/West 2008). Also subject to consideration are descriptions and observations of the claimant's limitations from his or her impairment(s), including limitations that result from symptoms, such as pain, provided by the claimant, the claimant's family, neighbors, friends, or other persons.  20 C. F. R. § 404.1545 (a)(3) (Thomson/West 2008).  The ALJ is responsible for assessing residual functional capacity. 20 C. F. R. § 404.1546(c) (Thomson/West 2008).

Plaintiff asserts that the ALJ failed to properly evaluate her residual functional capacity because he did not expressly include the limitations suggested by Dr. Hubbell that she rest for fifteen minutes every two hours (Docket No. 12, Plaintiff's Exhibit D).  The ALJ fully reviewed and considered all of the relevant evidence, acknowledging severe impairments that would prevent her working.  Despite these impairments, several medical consultants opined that Plaintiff's ability to sit was not affected by her impairments or Plaintiff could sit for six hours in an eight-hour work day (Tr. 108, 160, 194).  By her own admission, Plaintiff testified that she watched a lot of television and sat on the porch.  The ALJ complied with his statutory responsibilities by assessing these physical abilities and then determining if these abilities created limitations and/or restrictions that reduced the ability to do past work and other work. A fact finder could reasonably conclude that Plaintiff could sit for a total of six hours in an eight-hour workday notwithstanding breaks.  Consequently, the Magistrate cannot recommend reversal of the ALJ's conclusion because sole reliance on Dr. Hubbell's opinion could support another outcome.

5.

The ALJ wrongfully denied counsel's request to subpoena Dr. Alfano; consequently, he was

unable to cross-examine him at the administrative hearing.  Defendant suggests that Plaintiff was not entitled to have Dr. Alfano testify at the administrative hearing.

The SSA gives the Commissioner full rule making power to adopt reasonable and proper rules and regulations and provide for the nature and extent of proof and evidence and the method of taking such evidence.  42 U. S. C. § 405(a) (Thomson/West 2008).  The pertinent regulation, 20 C.F.R. § 404.950(d), authorizes an ALJ to issue a subpoena *ad testificandum* when it is reasonably necessary for the full presentation of the case.  The ALJ, on his or her own initiative or at the request of the party, issues subpoenas for the appearance and testimony of witnesses that are material to the issue at the hearing.  20 C. F. R. § 404.950(d) (Thomson/West 2008).  The decision to issue a subpoena is a discretionary privilege that has certain prerequisites.  *Calvin v. Chater,* 73 F. 3d 87, 90 (6th Cir. 1996).  Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge or at one of Social Security offices at least 5 days before the hearing date.  20 C. F. R. § 404.950(d)(2) (Thomson/West 2008).  The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena.  20 C. F. R. § 404.950(d)(2) (Thomson/West 2008).

Plaintiff's written request for the issuance of a subpoena was timely; however, it failed to state the important facts that Dr. Alfano was expected to prove or indicate why these facts could not have been proven upon written interrogatories[7].  Plaintiff failed to meet the prerequisites of the regulation in

---

[7]       The relevant text of the letter states: "Among other things, I do not understand how Dr. Alfano concludes that an individual with a Full Scale IQ of 67 has absolutely no work related impairments.  I contend that these conclusions should be given little if any weight since they contradict the findings of Dr. Roy, Ms. Site's treating psychiatrist. . . . " (Tr. 48).

requesting that Dr. Alfano's presence be ordered.

Notwithstanding the failure to comply with the regulations, Plaintiff agues that she has an absolute right to cross-examine Dr. Alfano and his conclusions that Plaintiff did not need Seraquel, her hallucinations were specious and her ability to work considering her low GAF score was impaired.

The Magistrate is not persuaded that there was an actual need for cross-examination of Dr. Alfano. Plaintiff introduced his inquiry about her consumption of Seraquel. In his written report, Dr. Alfano enumerated her medications, including Seraquel, but made no comments about Plainitff's consumption (Tr. 220). When assessing Plaintiff's mental content, Dr. Alfano acknowledged that Plaintiff claimed she saw and communicated with her deceased sister (Tr. 222). He derived no conclusions from such confession or made any medical diagnosis resulting therefrom. Finally, Dr. Alfano neither made a recommendation nor expressed an opinion about Plaintiff's employability. He simply explained the functional limitations she would encounter in the employment arena. This evidence does not conflict with the medical evidence already in the record or adversely impact the outcome of Plaintiff's case.

In this case, the failure to issue a subpoena does not fall short of the procedural due process promulgated by the Commissioner. Full and fair disclosure of the facts could have been achieved without cross-examination of Dr. Alfano. The ALJ did not abuse his discretion in denying the request for a subpoena.

6.

Plaintiff argues that the ALJ failed to complete the Psychiatric Review Technique Form (PRTF) as required by 20 C. F. R. § 404.1520a(e)(2). Failure to attach such form is reversible error. Defendant asserts that under the current regulations, the ALJ is only required to discuss the criteria identified in 20 C. F. R. § 404.1520a(b).

There is a special technique used to evaluate the severity of a mental impairment in adults claiming disability under the Act.  20 C. F. R. § 404.1520a (Thomson/West 2007).  Section 1520a was amended in August 2000.  *See* 65 Fed. Reg. 50746-01 (August 21, 2000).  The old rules required that the ALJ prepare and append a PRTF to each decision.  The new regulations abolished this practice in favor of the ALJ incorporating a specific finding as to the degree of limitation in each of the functional areas (daily living, social functioning, concentration, persistence and pace and episodes of decompensation) that the Commissioner uses to evaluate the severity of the mental impairment.  20 C. F. R. § 404.1520a(e)(2) (Thomson/West 2008).

Under the changed rating system, the ALJ must make findings regarding the four functional areas. In this case, he found Plaintiff had mild limitations in daily activities, mild limitations in social functioning, moderate limitations in concentration, persistence or pace.  There was no evidence of decompensation (Tr. 16).  The ALJ complied with the regulation as amended.  Accordingly, the Magistrate finds that this claim lacks merit.

## CONCLUSION

For the foregoing reasons, the Magistrate recommends that the Commissioner's decision be affirmed and the referral to the Magistrate be terminated.


/s/Vernelis K. Armstrong
United States Magistrate Judge

Dated: February 8, 2008


## NOTICE

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto

has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation.  A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals.  In *Thomas v. Arn*, 106 S.Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.

23